**RCN Webmail**                                                        **gww21@rcn.com**

## Fwd: Deline and Washington

--------------------------------------------------------------------------------

    **From :** Victor Berger <victorbergerlaw@gmail.com>   Mon, Mar 16, 2015 06:03 PM

**Subject :** Fwd: Deline and Washington

    **To :** gww21@rcn.com


---------- Forwarded message ----------
From: **Victor Berger** <victorbergerlaw@gmail.com>
Date: Mon, Mar 16, 2015 at 6:02 PM
Subject: Re: Deline and Washington
To: "Kedia, Soma" <skedia@mdlab.org>


Dear Ms. Kedia:

An interesting approach and one that leaves Mr. Washington no other option but to
file again either contempt or modification or both. I am asking you to reconsider your
evaluation of this matter in that it leads to nothing but further litigation. Please advice.
Thank you.

Sincerely,
Victor Berger


On Mon, Mar 16, 2015 at 5:34 PM, Kedia, Soma <skedia@mdlab.org> wrote:

    Mr. Berger,


    Unfortunately I cannot provide any assistance in facilitating visitation, as there is not to be
    any visitation going forward.  The order provides for him to get in touch and to participate
    as the therapist directs; it does not of course require the therapist to communicate with
    Mr. Washington or include him, particularly if she does not feel it is in the child's best
    interests.  According to the custody evaluation, the therapist does not feel that the child
    should have visitation for quite some time, as he is extremely frightened of his father.  Nor
    did she believe that Mr. Washington should have joint therapy sessions with the child at
    this time.  While I realize the order does not say so explicitly, the intention was for
    visitation to be suspended indefinitely until the child is ready to see his father again; you
    may want to obtain a copy of the Master's Findings and Recommendations to verify this.

I have also talked with Ms. Meldau and she has informed me that she does not at this time believe that Mr. Washington should have any visitation with the minor child. Nor does she intend to communicate with Mr. Washington at this time, as she is not bound by the court order (which does not require her to communicate with him in any event). Based on the evidence in the case, I do not believe he will gain visitation with the child until he completes a psychological evaluation and follows the recommendations of that psychological evaluation. I also do not believe he will succeed in any contempt petition, as no one has violated the court order, nor a modification, as there has not been any change in circumstances. In fact, if Mr. Washington files again, given his numerous frivolous filings with the court, I will request that the court place restrictions on him filing any further petitions.

Thank you for your attention to this matter.

Sincerely,

Soma R. Kedia, Esq.

Staff Attorney, Metropolitan Maryland Office

Legal Aid Bureau, Inc.

6811 Kenilworth Avenue, Suite 500

Riverdale, Maryland 20737

301-560-2101 (office)

301-560-2165 (direct)

301-927-4258 (fax)

skedia@mdlab.org

http://www.mdlab.org

*[Handwritten annotations:]*

VERY INTERESTING PAGE. I'VE FILED NUMEROUS TIMES OVER SEVERAL YEARS COMPLAINING FOR VISITATION AND IN CONTEMPT, ABOUT 4 YEARS AND I ~~GOV~~ AM DISCRIMINATED AGAINST FOR NO REASON. I'M NOT A CRIMINAL AND I HAVE NO COURT RECORD OF ANY WRONG DOING.

MY SON IS 13 YRS OLD AND HAVE NO RECORD OF ABUSE OR MENTAL ILLNESS TO REQUIRE THERAPIST BY THE COURT, DEPT. OF SOCIAL SERVICE RECORDS ARE CLEAN ALL AROUND THE COUNTRY.

MY SON HAS BEEN KIDNAPPED FROM ME

THIS WAS A CONDITION THAT IS INFLICTED UPON MY SON TO PREVENT VISITATION AND THEY ARE REFUSING TO FIXING IT AS REQUIRED BY THE STATE OF MARYLAND. THIS IS A CRIME BY THE HOWARD CO. COURT AND IT'S CRIMINAL THERE NEED TO BE A STOP.

**From:** Victor Berger [mailto:victorbergerlaw@gmail.com]
**Sent:** Wednesday, February 25, 2015 9:13 AM
**To:** Kedia, Soma
**Subject:** Re: Deline and Washington


Dear Ms. Kedia:


This is a follow up to yours of 2/6/15. I have been trying to reach Ms. Meldau without success. At this point my hope is that I can get Mr. Washington in touch with Ms. Meldau and have visitation start from there. Once accomplished I am hoping that I can bow out of the situation and have it develop from there. If you can lend any assistance to accomplish this it would be appreciated. Thank you, please advice.


Sincerely,

Victor Berger


On Fri, Feb 6, 2015 at 10:48 AM, Kedia, Soma <skedia@mdlab.org> wrote:

Mr. Berger,


My sincere apologies for the delay.  The information is:


Amy Meldau, LGSW, HopeWorks

410-997-0304


Will you be representing Mr. Washington going forward or are you just assisting him with this information?

Thanks,


Soma R. Kedia, Esq.

Staff Attorney, Metropolitan Maryland Office

Legal Aid Bureau, Inc.


6811 Kenilworth Avenue, Suite 500

Riverdale, Maryland 20737

301-560-2101 (office)

301-560-2165 (direct)

301-927-4258 (fax)

skedia@mdlab.org


http://www.mdlab.org


**From:** Victor Berger [mailto:victorbergerlaw@gmail.com]
**Sent:** Thursday, January 29, 2015 3:20 PM
**To:** Kedia, Soma
**Subject:** RE: Deline and Washington


Dear Ms. Kedia:


We spoke briefly last week. I am looking for the therapist used by your client for her son so Mr. Washington can contact him. An immediate answer would be appreciated. Thank you.


Sincerely,

--

Victor Berger
3701 Court House Drive
Ellicott City, MD 21043
Phone: 410-465-7904

Fax: 410-465-7903

The information contained in this transmission is privileged and confidential information intended for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you received this communication in error and then delete it. Thank you.

IRS CIRCULAR 230 DISCLAIMER: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY U.S. TAX ADVISE CONTAINED IN THIS COMMUNICATION (INCLUDING ATTACHMENTS), UNLESS OTHERWISE SPECIFICALLY STATED, WAS NOT WRITTEN TO BE USED AND CANNOT BE USED FOR THE PURPOSE OF (1) AVOIDING ANY PENALTIES UNDER THE INTERNAL REVENUE CODE OR (2) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED MATTERS ADDRESSED HEREIN.

Notice: This e-mail is from a not-for-profit law firm, the Legal Aid Bureau, Inc. (Legal Aid). It is intended solely for the use of the individual(s) to whom it is addressed. The contents of this message, together with any attachments, may contain information that is legally privileged, confidential and/or exempt from disclosure. If you believe you have received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer, and do not copy or disclose it to anyone else. If you properly received this e-mail as a client, co-counsel, employee, agent or retained expert of Legal Aid, you should maintain its contents in confidence in order to preserve any applicable privileges.

--

Victor Berger
3701 Court House Drive
Ellicott City, MD 21043
Phone: 410-465-7904
Fax: 410-465-7903

The information contained in this transmission is privileged and confidential information intended for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you received this communication in error and then delete it. Thank you.

IRS CIRCULAR 230 DISCLAIMER: TO ENSURE COMPLIANCE WITH REQUIREMENTS
IMPOSED BY THE IRS, WE INFORM YOU THAT ANY U.S. TAX ADVISE CONTAINED
IN THIS COMMUNICATION (INCLUDING ATTACHMENTS), UNLESS OTHERWISE
SPECIFICALLY STATED, WAS NOT WRITTEN TO BE USED AND CANNOT BE USED
FOR THE PURPOSE OF (1) AVOIDING ANY PENALTIES UNDER THE INTERNAL
REVENUE CODE OR (2) PROMOTING, MARKETING OR RECOMMENDING TO
ANOTHER PARTY ANY TAX-RELATED MATTERS ADDRESSED HEREIN.


Notice: This e-mail is from Maryland Legal Aid, a not-for-profit law firm. It is
intended solely for the use of the individual(s) to whom it is addressed. The
contents of this message, together with any attachments, may contain information
that is legally privileged, confidential and/or exempt from disclosure.  If you believe
you have received this e-mail in error, please notify the sender immediately, delete
the e-mail from your computer, and do not copy or disclose it to anyone else.  If
you properly received this e-mail as a client, co-counsel, employee, agent or
retained expert of Maryland Legal Aid, you should maintain its contents in
confidence in order to preserve any applicable privileges.


--
Victor Berger
3701 Court House Drive
Ellicott City, MD 21043
Phone: 410-465-7904
Fax: 410-465-7903
The information contained in this transmission is privileged and confidential
information intended for the use of the addressee.  If the reader of this message is
not the intended recipient, you are hereby notified that any dissemination,
distribution, or copying of this communication is strictly prohibited.  If you have
received this transmission in error, do not read it.  Please immediately reply to the
sender that you received this communication in error and then delete it.
Thank you.

IRS CIRCULAR 230 DISCLAIMER: TO ENSURE COMPLIANCE WITH REQUIREMENTS
IMPOSED BY THE IRS, WE INFORM YOU THAT ANY U.S. TAX ADVISE CONTAINED IN
THIS COMMUNICATION (INCLUDING ATTACHMENTS), UNLESS OTHERWISE
SPECIFICALLY STATED, WAS NOT WRITTEN TO BE USED AND CANNOT BE USED
FOR THE PURPOSE OF (1) AVOIDING ANY PENALTIES UNDER THE INTERNAL
REVENUE CODE OR (2) PROMOTING, MARKETING OR RECOMMENDING TO
ANOTHER PARTY ANY TAX-RELATED MATTERS ADDRESSED HEREIN.

--
Victor Berger
3701 Court House Drive
Ellicott City, MD 21043
Phone: 410-465-7904
Fax: 410-465-7903
The information contained in this transmission is privileged and confidential
information intended for the use of the addressee.  If the reader of this message is
not the intended recipient, you are hereby notified that any dissemination,
distribution, or copying of this communication is strictly prohibited.  If you have
received this transmission in error, do not read it.  Please immediately reply to the
sender that you received this communication in error and then delete it.
Thank you.

IRS CIRCULAR 230 DISCLAIMER: TO ENSURE COMPLIANCE WITH REQUIREMENTS
IMPOSED BY THE IRS, WE INFORM YOU THAT ANY U.S. TAX ADVISE CONTAINED IN
THIS COMMUNICATION (INCLUDING ATTACHMENTS), UNLESS OTHERWISE
SPECIFICALLY STATED, WAS NOT WRITTEN TO BE USED AND CANNOT BE USED
FOR THE PURPOSE OF (1) AVOIDING ANY PENALTIES UNDER THE INTERNAL
REVENUE CODE OR (2) PROMOTING, MARKETING OR RECOMMENDING TO
ANOTHER PARTY ANY TAX-RELATED MATTERS ADDRESSED HEREIN.

GEORGE WOLO WASHINGTON     \*    IN THE

      Plaintiff     \*    CIRCUIT COURT

vs.     \*    FOR

ROSE M. DELINE     \*    HOWARD COUNTY

      Defendant     \*

    \*    Case No: 13-C-09-77751

\*    \*    \*    \*    \*    \*

## JUDGMENT OF ABSOLUTE DIVORCE

THIS CAUSE STANDING READY FOR HEARING AND BEING DULY SUBMITTED AND TESTIMONY HAVING BEEN TAKEN BEFORE THE COURT AND THE ENTIRE PROCEEDINGS HAVING BEEN CONSIDERED,

IT IS THEREUPON, THIS *3rd* DAY OF *November*, 2009, BY THE CIRCUIT COURT FOR HOWARD COUNTY, MARYLAND, ORDERED, ADJUDGED, AND DECREED, THAT THE SAID GEORGE WOLO WASHINGTON, THE ABOVE-NAMED PLAINTIFF BE, AND HE IS HEREBY, DIVORCED ABSOLUTELY FROM THE DEFENDANT, ROSE M. DELINE; AND IT IS FURTHER

ORDERED, that the Defendant be, and she is hereby, granted the sole legal and physical custody of BEATRICE WOLO, BRENDA WOLO, and GEORGE WOLO, JR., the minor children of the parties; and it is further

ORDERED, that the Plaintiff shall have reasonable visitation with the minor children after contacting the Defendant in advance to arrange such visitation; and it is further

ORDERED, that the Plaintiff shall pay to the Defendant the sum of one thousand dollars ($1,000.00) per month, as and for child support, commencing from November 1, 2009. Said payments shall be by wage lien and shall be payable through Maryland Child Support; and it is further

ORDERED, that the lien on the Plaintiff's wages in the amount of $560.30 per month, in Montgomery County Circuit Court Case Number 7993 FL, shall terminate upon the establishment of the wage lien in the instant case in the amount of One Thousand Dollars ($1,000.00) per month; and it is further

25000

ORDERED, that the Plaintiff and Defendant are hereby denied alimony; and it is further

ORDERED, that Plaintiff shall provide medical insurance for the minor children; and it is further

ORDERED, that all marital property has been divided; and it is further

ORDERED, ADJUDGED, AND DECREED, that if the Plaintiff (obligor) hereunder accumulates support payment arrears amounting to more than thirty (30) days of support, the said Plaintiff (obligor) shall be subject to the imposition of an earnings withholding, further, that the said Plaintiff (Obligor) be, and he is hereby, required to notify the Clerk of the Court within ten (10) days of any change of address or change of employment so long as this support order is in effect, and it is further provided that the failure to the Plaintiff (obligor) to so notify the Clerk of this Court of any change in address or employment as hereinbefore provided will subject the said Plaintiff (obligor) to a penalty not exceeding $250.00 and may also result in the said Plaintiff (obligor) not receiving notice of any proceedings for earnings withholding; and it is further

ORDERED, that the parties shall equally divide the costs of this proceeding.

_____
JUDGE

ENTERED

NOV 5 2008

CLERK, CIRCUIT COURT
HOWARD COUNTY

2

# JOHN T. RIELY

ATTORNEY AT LAW

2ND FLOOR

15752 CRABBS BRANCH WAY

ROCKVILLE, MD 20855

———

(301) 548-1022

FAX (301) 548-1331

jtriely@msn.com

ADMITTED IN MARYLAND
AND THE DISTRICT OF COLUMBIA

June 30, 2014

Ms. Rose Deline
9978 Guilford Road, #30
Jessup, MD 20794

RE:     Washington v. Deline
        Case No.  13CO90-77751

Dear Ms. Deline:

Your response to the Interrogatories is now late and over due.  Please let me know when I will receive them.

Please advise.

John T. Riely

C: G. Washington

*David Di Vorce*

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

**WASHINGTON**
    Plaintiff

    v.                                      Case No: **CAD08-15873**

**DELINE**
    Defendant

## MEMORANDUM AND ORDER OF COURT

    The above captioned case has been presented to the undersigned as a chambers matter. The Court has read the Plaintiff's Exceptions to Master's Recommendations filed May 7, 2009.

    The file reflects a hearing was held on May 6, 2009, before Master Rogers. As evidenced by the Master's "Notice" he made his oral recommendations on the aforesaid date, and notified the parties in writing that written exceptions were to be filed on or before May 18, 2009, pursuant to Maryland Rule 9-208(f). The record in this case reflects that Plaintiff and Defendant were present at the May 6, 2009 hearing.

    The Maryland Rule 9-208(f) requires that Exceptions shall set forth the asserted error. "Any matter not **specifically** set forth in the exceptions is waived unless the court finds that justice requires otherwise". Therefore, the Court finds that the Plaintiff's Exceptions did not specify the **Master's** error to be considered. Accordingly, it is this _22nd_ day of _May_____, 2009, by the Circuit Court for Prince George's County, Maryland,

    ORDERED, that the Plaintiff's Exceptions received by the Clerk on May 7, 2009, are hereby **DISMISSED.**

                                     _____
                                            JUDGE

                                **Judge Toni E. Clarke**

Copies mailed by the Court to:

GEORGE W. WASHINGTON
10003 LINDLEY CT
LANHAM MD 20706

ROSE M. DELINE
8767 LINCOLN ST
SAVAGE MD 20763

007
*ncm*

TRUE COPY—TEST#

*Peggy Magee*

6-23-09 E

$14 E
45

GEORGE WOLO WASHINGTON,  &ast;  IN THE

   Plaintiff      &ast;  CIRCUIT COURT

v.            &ast;  FOR

ROSE M. DELINE,     &ast;  HOWARD COUNTY

   Defendant     &ast;  Case No. 13-C-09-77751

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

## ORDER

  This Matter comes before the Court upon consideration of Plaintiff's Exception to Report of Master ("Exceptions") (D.E. 91/0). Plaintiff filed Exceptions on December 29, 2014. Pursuant to Maryland Rule 9-208(g), "The transcript shall be filed within 30 days after compliance with subsection (g)(1) or within such longer time, not exceeding 60 days after the exceptions are filed, as the master may allow." A transcript needed to be filed by January 29, 2014. A transcript has not been filed as of February 4, 2015. Plaintiff failed to comply with Rule 9-208(g) and did not request an extension of time for filing of the transcript. Rule 9-208(g) further provides, "The court may dismiss the exceptions of a party who has not complied with this section." Therefore, it is this _6th_ day of February 2015, by the Circuit Court for Howard County,

  ORDERED, that Plaintiff's Exceptions be and are hereby DISMISSED.

         _____

         Lenore R. Gelfman, Administrative Judge
         Circuit Court for Howard County

TRUE COPY TEST

_Wayne A Robey_

      .Clerk

ENTERED

FEB 1 2 2015

CLERK, CIRCUIT COURT
HOWARD COUNTY

92000

| | | |
|---|---|---|
| GEORGE WOLO WASHINGTON | * | IN THE |
| Plaintiff | * | CIRCUIT COURT |
| v. | * | FOR |
| ROSE M. DELINE | * | HOWARD COUNTY |
| Defendant | * | Case No. 13-C-09-077751 |

\* \* \* \* \* \* \* \* \* \* \*

## ORDER OF COURT

UPON CONSIDERATION of the testimony and exhibits received in a hearing on the 12th day of December, 2014, before the Master in Chancery, her report having been read and considered, it is, then, by the CIRCUIT COURT FOR HOWARD COUNTY, MARYLAND, this _06th_ day of _February_, 2015,

ORDERED, ADJUDGED, AND DECREED, that the Defendant, Rose M. Deline, is hereby granted continued sole legal and physical custody of George Wolo, Jr., the one minor child of the parties; and it is further

ORDERED, ADJUDGED, AND DECREED, that the Plaintiff's access with the minor child shall be as is recommended by the child's therapist and as agreed to between the parties; and it is further

ORDERED, ADJUDGED, AND DECREED, that the Defendant shall continue the minor child in therapeutic services and that the therapeutic services shall address the child's relationship with the Plaintiff, George Wolo Washington; and it is further

ORDERED, ADJUDGED, AND DECREED, that the Plaintiff shall make contact with the child's therapist so that the child's therapist has the contact information of the Plaintiff. That the Plaintiff shall make himself available to participate in the minor child's therapy when deemed appropriate by the therapist.

All subject to the further Order of this Court.

**ENTERED**

This is a proper Order.

_Lara Weatta_

Master in Chancery

FEB 1 2 2015

**CLERK, CIRCUIT COURT HOWARD COUNTY**

_____ R. Kelfman

JUDGE

TRUE COPY TEST

_Wayne A. Robey_

Clerk

94000

| GEORGE WOLO WASHINGTON | * | IN THE |
| --- | --- | --- |
| Plaintiff | * | CIRCUIT COURT |
| vs. | * | FOR |
| ROSE DELINE | * | HOWARD COUNTY |
| Defendant | * | Case No. **13-C-09-077751** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>CUSTODY EVALUATION</u>

On September 19, 2014, Court Social Worker Tammy Berkowitz-Weiner, LCSW-C, was ordered to conduct a visitation investigation to determine what contact between Mr. George Wolo Washington and his minor son George Wolo (August 28, 2001, age 13) is appropriate. George is the youngest of the three children born to Mr. Washington and Ms. Rose Deline. George's siblings, Beatrice Wolo (age 20) and Brenda Wolo (age 18), are adults and in college. Mr. Washington and Ms. Deline have been divorced since 2010.  Mr. Washington has not seen George in over one year.

This family has no CPS history in MD. Ms. Rose Deline has tried to obtain several Protective Orders against Mr. Washington that have been dismissed. Mr. Washington and Ms. Deline have been disputing Mr. Washington's visitation with his children since 2007.

### <u>Interview with Mr. George Wolo Washington</u>
On October 2, 2014, Mr. Washington came to the court house without a scheduled appointment and met with Court Social Worker. Mr. Washington came prepared with documents and photographs of him and George.

Mr. Washington reported that he has no history of abuse or neglect of his children. He is employed as an armed security officer and is in the military. He does not use drugs or drink alcohol and he does not smoke. He has taken parenting classes and anger management classes. He believes that he is a positive individual and always follows the rules.

Mr. Washington reported that Ms. Deline needs counseling because she is a liar and she is bitter that he is in another relationship. He thinks Ms. Deline should be held in contempt for not allowing him to visit his son. Mr. Washington reported that Ms. Deline borrows money and does not pay it back, she is fraudulent with credit cards and bad checks. She also accuses him of domestic violence. She has poisoned his children's minds and brought them to court to speak badly of him. He reported that Ms. Deline moved and changed her phone number so he has no way to contact his children.

According to Mr. Washington, Ms. Deline has always wanted to reconcile their relationship. When he would attempt to see his children, Ms. Deline would ask him to stay for dinner, then she would get mad when he left. When Ms. Deline found out that Mr. Washington's girlfriend

was living with him that is when Ms. Deline refused to allow him to see his children. Ms. Deline told the children not to eat the food that his girlfriend cooked. Reportedly, on one occasion, Ms. Deline told George to act like he was sick so he did not have to visit his father.

Mr. Washington reported that he bought George a gym bag but Ms. Deline threw it away. He reported that he has always paid the bills for his family. He paid hospital bills for all three C-sections. He has money in an account for all of his children. He does not know if Brenda is going to college or not but he is aware that Beatrice is attending Delaware State. Mr. Washington reported that he was not a bad father. Ms. Deline did have her father in her life so she thinks it is normal for her children not to have a father in their life. Mr. Washington reported that he loves his children and would do anything for his kids. He remembers taking George to the Redskins game, to the beach, to the park, to the D.C. mall, to ride motorcycles and go-carts. He wants his son in his life and wants George to know that he loves him.

Throughout the interview, it was difficult to engage Mr. Washington into listening to Court Social Worker. He was repetitive in stating that he wanted a visit with George or he wanted to sit down and talk to George and Ms. Deline together. He stated that Court Social Worker could make George and Ms. Deline sit down and talk to him. He did not grasp that Court Social Worker was going to interview George and Ms. Deline separately, and if they agreed to have a joint meeting with him (with Court Social Worker facilitating the meeting), it would be arranged. He continued to repeat himself, stating that he was not on trial, not a criminal, never abused or neglected George and that Court Social Worker could allow him to see his son.

Court Social Worker read the Master's Report and Recommendations conclusion dated September 19, 2014 to Mr. Washington. It stated that he could see George at George's football games, but he could not approach George; that he and George could participate in joint sessions with George's therapist, if it was deemed appropriate (Mr. Washington stated that there was no need for George to have therapy because George is not mentally ill); and that he and George should participate in reunification therapy.

Mr. Washington contacted Court Social Worker numerous times by telephone to "check up" on the status of when he was going to see George. He wanted to know if Ms. Deline was cooperating and when the interviews were going to take place. Every telephone conversation turned into a repetitive description of what Court Social Worker's process was and what Mr. Washington wanted to happen. Mr. Washington returned to the courthouse to speak to Court Social Worker without a scheduled appointment but Court Social Worker was not available to speak with him.

Court Social Worker is unclear whether Mr. Washington has a receptive language processing disorder or if he has difficulty when he does not have control of the situation.

### Interview with George Wolo III

On November 10, 2014, Court Social Worker interviewed George alone at the court house in the children's waiting room. George appeared to be handsome, clean, well dressed, polite, mature, soft spoken and articulate.

2

George reported that he was 13 years old and in the 8th grade at Oakland Mills Middle. His grades are A's and B's. He likes math because it is challenging, computer programming and playing trombone in band. He has many friends in school and outside of school.

George plays football from July until November, and does not have much free time. He plays football for Grassroots Football League. It is an All Star League where he plays defensive line and he believes he has a future in professional football. He has three coaches that have been father figures in his life. They took him under their wing and taught him about football. They teach him life skills and about being a man. George's coaches have written him recommendations to get into a private school where he can play football and receive a great education. George is very excited about this. He loves football and wants to go (to that school) very much.

When George does have free time, he may go to a friend's house, a birthday party or a movie. On weekends, he plays football, he and his mother go to Panera and run errands.

George's maternal grandparents, aunts, uncles and cousins live in Georgia. His family came here for Beatrice's graduation in 2012 and for Brenda's graduation in 2014. He saw his family in Georgia in 2009 during Christmas. He frequently speaks to his aunt by telephone.

After building a rapport with George, Court Social Worker asked George why his father was not a father figure in his life. George began to cry silently with tears running down his face. He remained calm and soft spoken and stated, "He has put us through so much." Court Social Worker asked George to explain what that meant. George stated that he does not feel comfortable going to his father's home or doing anything with his father because "I get scared."

Court Social Worker asked George to give some examples of why he would be scared of his father. George reported that at age 4, he dropped a camera so his father hit him with an open hand on his head and it knocked him down. In 2007, George and Beatrice saw their father hit their mother all over and pulled her wig off. They were crying and could not do anything about it. George was 5 years old. That same day, his father hit Beatrice in the face because he thought she had lied.

In 2013, George got into his father's car to go on a visit with him. George could tell his father was already mad by the look on his father's face. His father was mad because he wanted to see George on his birthday, but there was a restraining order against him and his mother would not allow his father to take him. He had not seen his father for one month. Once they arrived at his father's home, his father did not do anything with him, so George played video games. His father looked at him with a mad look on his face and told him to stop playing video games. His father made him stand in the corner and "pump tire" for 10 minutes. George had to do squats with his hands up by his head the entire 10 minutes. His father's girlfriend Anna was there and she told his father to stop but he told her "Shut up and stay out of it."

Court Social Worker asked George if he had anything positive to say about his father. George reported that at age 9, his father took him to a Redskin's game, and last year his father took him

3

to ride go-carts, but that was it. George never wants to go anywhere with his father because he knows who his father really is—"mean and abusive."

George reported that his father does not know anything about him. His father does not talk to him. His father runs errands or sits around with his girlfriend. George stated, "I don't know anything about him either, except that he is controlling and abusive, that's all." If George wants a cheeseburger at Burger King, his father will tell him "no, get a whopper." If George says his favorite color is blue, his father will say "no, it should be black." When George cheers for the Ravens, his father tells him it is disrespectful because he likes the Redskins. When George wanted to eat ice cream, his father told him it was disrespectful not to eat Anna's food. George is "really scared" because all of this happens when they are alone. These are the same type of reasons his sisters do not speak to their father, however, they don't back down and their father knows they won't back down.

George was crying profusely and stated that does not ever want to see his father. When he is an adult, he probably still won't want to see him. "I hate him and if I never see him I'll be the happiest child. He's done so much to my family." George reported that he does not want to go to counseling with his father because he is scared of what his father can do. He has seen him beat his mother (Ms. Deline) and he knows what he (Mr. Washington) is capable of. "He could do it to me too."

Court Social Worker ended the interview, seeing that George was very emotional. George went into the hall to where his mother was waiting for him. George was crying, hugged his mother and laid his head into his mother's shoulder. He said to her, "I hate him" and she replied, "That's why we are here" as she soothed him.

**<u>Interview with Ms. Rose Deline</u>**
Ms. Deline reported that she and Mr. Washington lived together from 1993 until 2007. Reportedly, she had been the victim of domestic violence for over 10 years. Mr. Washington would hit her then apologize and say it would not happen again. Her extended family lived in Georgia so she stayed with Mr. Washington because she was afraid to be on her own with three children. In June 2007, Mr. Washington was beating Ms. Deline, so Brenda ran to get a neighbor to pull Mr. Washington off of her. Brenda called the police and Mr. Washington ended up moving out. Earlier that day, Mr. Washington had hit Beatrice.

In July 2007, Mr. Washington sold the family home that she and the children were living in, so they had to move into an apartment. They moved a few more times because Mr. Washington kept coming to their home and upsetting everyone. By that time, the girls had already witnessed so much that they did not speak to their father. Currently, Ms. Deline, George III and Brenda (age 18 and attends Howard County Community College) live in a two bedroom apartment and their address is undisclosed. Beatrice (age 20) attends Delaware State and lives on campus but does come home to visit often. Ms. Deline has been a medical records manager in a pediatrician's office for the past eight years.

Ms. Deline reported that the children witnessed her abuse and were victims of abuse themselves. When George III was a young child, Ms. Deline was giving him a nebulizer treatment. A part of

the nebulizer broke so Ms. Deline had to hold it in place. Mr. Washington told her to leave it alone and when she said she could not let it go, he bit her hand. George III witnessed that and cried. Ms. Washington took George III into another room and locked the door. Mr. Washington would explode if anyone said something he did not agree with. Ms. Deline would tell Mr. Washington not to curse in front of the children and he would say, "I can do whatever I want."

On one occasion, Mr. Washington decided to move his things out of the master bedroom and into George III's bedroom and put George III's things into the master bedroom. George III dropped something and Mr. Washington hit him on his back and face. The police came and Mr. Washington had to leave. On another occasion, Mr. Washington came home from work and Brenda jumped out and yelled "surprise." Mr. Washington kicked her and hit her so she cried. Ms. Deline asked him what happened and he said that Brenda scared him. The couple argued and He said, "I'll hit you too."

According to Ms. Deline, if Mr. Washington did not get his way, there would be problems for everyone. Beatrice wanted to join the chorus in school. Ms. Deline thought it was fine and allowed Beatrice to join chorus. Mr. Washington found out and said that if Beatrice continued chorus, he would beat her. Brenda wanted to take swimming classes and Mr. Washington would not allow it. If anyone went against him, he would say that they were "disobedient." Mr. Washington had to be in control of everything and everyone or "you would pay for it."

In the ninth grade, Beatrice stopped talking to her father. Beatrice joined the track team and was on her way to a track competition. Mr. Washington refused to allow Beatrice to go and turned her cell phone off. Ms. Deline thought it was an honor for Beatrice to be in the competition and bought Beatrice another cell phone because it was a weekend trip. It was around the same time that Brenda stopped talking to her father as well. He refused to pay for her to have her hair done and said that she was "disrespectful like your mother." George III was in elementary school and had witnessed all of the verbal and physical abuse so he spoke to his father by cell phone "out of fear, not out of love."

Ms. Deline stated that everyone knew that when Mr. Washington got home, the home was on "shut down" mode from all of the tension, wondering what would happen. There were times when Ms. Deline thought to herself that if he snaps, he may kill her. Mr. Washington would hurt you, then say he never hurt you. He would spit in your face, then say he never spit in your face. Ms. Deline thinks that it is a mental problem, to do things then say it never happened. He does not comprehend how controlling and abusive he is or that he has spent years verbally, physically and mentally hurting his own family.

There are times now when George III is still so hurt by his father's past actions that he (George III) asks her (Ms. Deline) "Why did dad do that?" George III cannot understand why his father did things to hurt his own family. Ms. Deline reported that it is a struggle for her to find answers as to why Mr. Washington is the way he is but it is time for her and her children to move on. It was a struggle to raise three children on her own. Mr. Washington moved out when the children were in elementary and middle school, and now Beatrice and Brenda are in college and George III is in middle school, being recruited to a private school to play football.

George III is a straight A student. He is successful in everything he pursues because he gives 100 percent effort in everything he does. He is a sweet child and adults complement him on his success and behavior. His father tortured him and terrorized him but it not turn him into a bad person. Beatrice and Brenda have gotten over the turmoil but George III holds it in. George III has a lot of pain to deal with. He needs to let it out, so therapy will be helpful for him.

Ms. Deline reported that she and her children are happy, healthy and peaceful without Mr. Washington in their lives. No one is living in fear anymore. They laugh now and learned how to be confident. The children do not want to see their father or talk to him.

## Interview with George Wolo III's Therapist

Therapist (name with-held for privacy) reported that she met with George III on November 10, 2014 and will meet with him weekly. George III is mature and "horrified" of his father. George is not ready to visit his father, even if it was supervised, and George III is not ready to participate in joint sessions with his father.

## Conclusion

At this time, Court Social Worker recommends that George III continue to participate individual therapy until such time when the therapist feels George is ready to pursue joint sessions for reunification with his father. George III needs time to heal. It is unlikely that forcing George to see his father when he is fearful of him and does not trust him will be a positive experience. It is likely that George will be further traumatized and that his hatred of his father will intensify if his father denies, avoids or discredits George's allegations and feelings. It seems likely that Mr. Washington will try to control the sessions, which will not be productive for George III. Through therapy, George III may be able to come to terms with his feelings about his father and his sense of powerlessness. Through therapy, George III will develop strategies to cope with his father's controlling personality, if he chooses to have a relationship with him in the future.

Court Social Worker also recommends that Mr. Washington have a mental health evaluation and follow recommendations.

This report is submitted in accordance with the court order dated September 19, 2014. Court Social Worker is willing to provide additional information as needed.


_Tamy Berkowitz Weiner LCSW-c_                    _12/1/14_
Tammy Berkowitz Weiner, LCSW-C                        Date

6

Page: 1    Date: 10/10/2007
Room: 4    Time: 10:09 AM

Case No. 0T00055139





# DISTRICT COURT OF MARYLAND FOR HOWARD COUNTY

Located at 3451 COURTHOUSE DRIVE, ELLICOTT CITY, MD 21043

## STATE OF MARYLAND VS. WASHINGTON, GEORGE WOLO

7517 MIDAS TOUCH
COLUMBIA MD 210460000

CC #: 07-56544       SID:              LocID:

Eyes: BRN   Hair: BLK   Height: 5"06'     Weight: 280 lb.

Race: 1   Sex: M   DOB: 05/06/1966   DL #:

## DEFENDANT TRIAL SUMMARY

The above case was heard today, 10/10/2007 by Judge HANTMAN, SUE-ELLEN
The Court's finding is as follows:

    001  ASSAULT-SEC DEGREE
Plea - NOT GUILTY   Verdict - NOT GUILTY

    002  ASSAULT-SEC DEGREE
Plea - NOT GUILTY   Verdict - NOT GUILTY

    003  ASSAULT-SEC DEGREE
Plea - NOT GUILTY   Verdict - NOT GUILTY

10/10/2007    Defendant_____ (WASHINGTON, GEORGE WOLO)

You may be entitled to expunge the record relating to the charge or charges against you if you meet certain conditions.
Further information on expungement is contained in a brochure available at the Clerk's Office or on our website at
http://www.courts.state.md.us/district.

**Tracking No. 061001977551**

# NATIONAL FAMILY RESILIENCY CENTER, INC.

### CERTIFIES THAT



George washington

### COMPLETED THE

## NFRC PARENTING SEMINAR

### ON

SEP 1 6 2009



National *Family*
*Resiliency* Center

RISA J. GARON, LCSW, BCD, CFLE
EXECUTIVE DIRECTOR

Certified copy XXXXX XXXX Signature XX DAN XXXXXX KXXX X XXX

# Certificate of Completion
## This certifies that

# George Washington

*Has completed 8 hours of Anger Management Class*

*October 14- November 9 2009*

*Sponsored by Navy Fleet and Family Support Centers*



__Dedra Anderson__

__W. Alicia Witherspoon LCSW, CAS__

BY THE REQUEST OF THE U.S. MILITARY - DUE TO MY DIVORCE
I COMPLETED BY ATTENDED



March 27, 2014

George Wolo Washington
818 Heron Drive
Silver Spring, MD 20901

Re: *Deline v. Washington*, Case No.: 13-C-14-098282

Dear Mr. Washington,

    I am writing this letter to inform you that my client, Ms. Deline, wants absolutely no contact with you (in person, via telephone, or e-mail) except regarding the children as outlined in the Visitation Agreement you signed on September 11, 2013.  Any contact not regarding visitation will be deemed harassment and legal action will be taken as necessary.

    Additionally, you are not welcome at Ms. Deline's place of employment: 8821 Columbia 100 Parkway, Columbia, MD 21043.

    Criminal Law Article 6-403 (Wanton Trespass) makes it a misdemeanor crime to enter upon or cross over the private property of another, after having been notified by the owner or the owner's agent not to do so. **This letter is your notification that any attempt to go to Ms. Deline's place of employment will constitute trespass.**

    Criminal Law Article 3-803 (Harassment) makes it a misdemeanor crime to follow another in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys the other:
      (1) with the intent to harass, alarm, or annoy the other;
      (2) after receiving a reasonable warning or request to stop, by or on behalf of the other; and
      (3) without a legal purpose.
**This letter serves as your warning and request to desist.**

Sincerely,

Najeela C. Karimi, Esq.

Cc: Rose Deline

5457 Twin Knolls Rd.
Suite 310
Columbia MD 21045
p 410 997 0500
f 410 997 1597
naeela.deline.esq