IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GEORGE WOLO WASHINGTON      *
           Plaintiff,
     v.                   *     CIVIL ACTION NO. ELH-15-853

ROSE M. DELINE             *
           Defendant.

                    *****

## MEMORANDUM

On March 23, 2015, George Wolo Washington, who is self-represented, filed a fee-paid complaint against his ex-wife, Rose M. Deline. ECF 1. He has appended numerous exhibits to his suit. *See* ECF 1-1. Both parties are residents of Maryland.

In reviewing the complaint, it is apparent that plaintiff is challenging decisions of the Circuit Court for Howard County involving custody and visitation. Plaintiff claims subject matter jurisdiction based on federal question jurisdiction. The suit must be dismissed.

### A. Factual Background

Plaintiff seems to take issue with decisions of the Circuit Court for Howard County, Maryland denying him visitation with respect to his thirteen-year-old son. Plaintiff claims he is "being discriminated against and [his] rights abused" by that court. ECF 1 at 2.[1] He asks this Court to intercede, given his alleged lack of "a fair trial/hearing" to "resolve this matter. . . ." *Id.*

According to plaintiff, his ex-wife, Ms. Deline, "is an illegal alien" and has "no work permit. . . ." He is in fear that his son, who was born in the United States, "might be taken out of this country along side with her, if [she is] deported." *Id.* at 3. Plaintiff claims that Ms. Deline "has

---

[1] Citations are to the electronic docketing pagination.

continuously been filing false accusations against [him] to destroy [his] life. . . ."  *Id.* at 4.  For example, plaintiff alleges that he "was falsely accused for domestic violence, handcuffed, and arrested . . . [and] lost [his] civilian job. . . ," but was "later found innocent . . . of all charges. . . ."  *Id.* at 3.

Further, Washington asserts that his former wife became "very angry" when she learned that he is involved with someone else, and she filed "a trespassing order" to prevent his "communication."  *Id.* at 4.  Thereafter, he sought help from the Circuit Court for Howard County, which "punished" him by "conditioning" his visitation involvement with a "therapist. . . ."  *Id.* at 4.

Plaintiff explains that he had agreed to give defendant "full custody of all the children"[2] because he is in a military combat unit, but he had expected visitation.  *Id.*  Moreover, he insists that Ms. Deline is "in contempt of all court orders. . . ."  *Id.* at 4.

Plaintiff concludes:  "[I]t is still an ongoing problem communicating with the therapist.  I've not spoken to my son . . . in two years.  This has to stop. . . . I'm simply a loving father to all my children and want to be involved in their lives."  *Id.*  He seeks visitation with or custody of his son, and asks this Court to "stop the discrimination and fix what the State of Maryland Circuit Court of Howard County fail [sic] to do."  *Id.* at 7.

The exhibits that plaintiff attached to the suit indicate that the parties became involved in litigation in 2007.  In 2009, plaintiff obtained a Judgment of Absolute Divorce from defendant, awarded by the Circuit Court for Howard County.  ECF 1-1 at 8.  Ms. Deline was awarded sole legal and physical custody of the parties' three children, but plaintiff was granted reasonable visitation.  *Id.*

---

[2] Plaintiff alleges that he is the father of 3 children.  However, the complaint concerns only one child, who is now the only minor child of the parties.

The son is now the only remaining minor child of the parties.  ECF 1-1 at 13.

A custody evaluation was conducted in September 2014.  ECF 1-1 at 14.  The report, dated December 1, 2014 (ECF 1-1 at 14-19), reflects that the child is "scared" of his father.  *Id.* at 16.  In an Order issued by the Circuit Court for Howard County dated February 6, 2015, docketed February 12, 2015, the plaintiff's access to the parties' son "shall be as recommended by the child's therapist," and plaintiff was ordered to participate in the child's therapy as deemed appropriate by the therapist. ECF 1-1 at 13.

According to the Docket, a copy of which is appended hereto, plaintiff did not note an appeal from that ruling to the Maryland Court of Special Appeals.  Instead, he filed suit in this Court.

## B.  Discussion

Federal district courts are courts of limited jurisdiction.  *See Exxon Mobil Corp. v. Allapattach Servs., Inc.*, 545 U.S. 546, 552 (2005); *United States ex rel. Voyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).  "They possess only the jurisdiction authorized them by the United States Constitution and by federal statute."  *Jadhav*, 555 F.3d at 347 (citing *Bowles v. Russell,* 551 U.S. 205 (2007)).

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court."  *Miller v. Brown,* 462 F.3d 312, 316 (4th Cir. 2006). "[J]urisdiction goes to the very power of the court to act."  *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008).  Moreover, a district court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).  Of import here, "[s]ubject matter jurisdiction cannot be forfeited or waived, and can be raised by a party, or by the court *sua sponte*, at any time prior to final

judgment." *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010); *see McCulloch v. Vélez*, 364 F.3d 1, 5

(1st Cir. 2004) ("It is black-letter law that a federal court has an obligation to inquire *sua sponte* into

its own subject matter jurisdiction.") ; *see also Snead v. Board of Educ. of Prince George's County*,

815 F. Supp. 2d 889, 893-94 (D. Md. 2011).  And, pursuant to Fed. R. Civ. P. 12(h)(3), "the court

must dismiss the action" if it determines that the court lacks subject matter jurisdiction.  *See also*

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006).[3]

This case may not proceed in this court for several reasons.

First, the case clearly involves matters of family law.  Such issues have traditionally been

reserved to the state or municipal court systems with their expertise and professional support staff.

*See Moore v. Sims*, 442 U.S. 415, 435 (1979).

Under the domestic relations exception to federal jurisdiction, federal courts generally abstain

from review of domestic cases.  *See Ankenbrandt v. Richards*, 504 U.S. 689, 701-05 (1992).  It may

be appropriate for the federal courts to decline to hear a case involving elements of the domestic

relationship, even when divorce, alimony or child custody is not strictly at issue:

> This would be so when a case presents "difficult questions of state law bearing on
> policy problems of substantial public import whose importance transcends the result
> in the case then at bar."  Such might well be the case if a federal suit were filed prior
> to effectuation of a divorce, alimony, or child custody decree, and the suit depended
> on a determination of the status of the parties.

*Id*. at 705-706 (quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800,

814 (1976)).

---

[3] A court also has the inherent power to dismiss, *sua-sponte*, frivolous or malicious actions and motions.  *See Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012) (per curiam) (citations omitted); *cf. Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 308 (1989); Fed. R. Civ. P. 12(f) ("The court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter.  The court may act: (1) on its own . . . .").

This conclusion is supported by sound policy considerations.  Issuance of decrees of this type not infrequently involve retention of jurisdiction by the state court and deployment of social workers to monitor compliance. As a matter of judicial economy, state courts are eminently more suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over child custody, visitation, and support decrees.  Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power over these cases because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees.

Notably, this is not an international child custody case, governed by federal statute or a treaty.  Nor does this case involve diversity of citizenship.  *See* 28 U.S.C. § 1332.  As difficult as this matter is for Mr. Washington, it springs from a conventional State custody and visitation dispute, in which he has not met with success.  Domestic relations cases, including child custody and visitation matters, are generally not heard in federal court, precisely because "State courts . . . have the experience to deal with this specific area of the law."[1]  *Cantor v. Cohen*, 442 F.3d 196, 202 (4th Cir. 2006) (noting that "federal courts are courts of limited jurisdiction and generally abstain from hearing child custody matters") (citing *Cole v. Cole*, 633 F.2d 1083, 1087 (4th Cir. 1980)).  Even when there is diversity of citizenship, "diversity jurisdiction does not include power to grant divorces, determine alimony or support obligations, or determine child custody rights." *Wasserman v. Wasserman*, 671 F.2d 832 (4th Cir. 1982); *see Raftery v. Scott*, 756 F.2d 335, 343 (4th Cir. 1985) (discussing domestic relations exception to federal courts' diversity jurisdiction).

Second, the *Rooker-Feldman* doctrine warrants abstention or dismissal in this case.

5

The *Rooker–Feldman* doctrine is based upon the holdings of the Supreme Court in two cases: *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). Under the *Rooker-Feldman* doctrine, a federal court lacks jurisdiction to overturn a state court judgment, even when the federal complaint raises allegations that the state court judgment violates a claimant's constitutional or federal statutory rights. In creating this jurisdictional bar, the Supreme Court reasoned that because federal district courts have only original jurisdiction, they lack appellate jurisdiction to review state court judgments. The Court explained that only the Supreme Court has federal court appellate jurisdiction over state court judgments. *See* 28 U.S.C. § 1257.

In effect, the *Rooker-Feldman* doctrine precludes federal court action "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005). In other words, the doctrine forbids claims that seek redress for an injury caused by a state-court decision, because such a claim essentially asks "'the federal district court to conduct an appellate review of the state-court decision.'" *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006) (quoting *Davani v. Va. Dep't of Transp.* 434 F.3d 712, 719 (4th Cir. 2006)), *cert. denied,* 551 U.S. 1130 (2007).

The doctrine derives from 28 U.S.C. § 1257, a federal statute that vests the United States Supreme Court–and only the United States Supreme Court–with jurisdiction to hear appeals from state court decisions in cases raising questions of federal law. *See Adkins*, 464 F.3d at 463-64. In

other words, the *Rooker-Feldman* doctrine precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006).

In *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006), the Fourth Circuit held that "the *Rooker–Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." That is, " *Exxon* requires us to examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If he is not challenging the state-court decision, the *Rooker–Feldman* doctrine does not apply." *Id.* at 718.

The State court docket and plaintiff's exhibits show that since 2007, the parties have been engaged in litigation in the state court involving divorce, custody, and visitation. *See Deline v. Washington*, Case No. 13C07071443 (visitation); *Washington v. Deline,* Case No. 13C07071448 (two-party custody); and *Washington v. Deline*, Case No. 13C09077751 (divorce) (Circuit Court for Howard County) (copies attached). The docket and plaintiff's exhibits reveal that in a recent order dated February 6, 2015, and docketed on February 12, 2015, the Circuit Court for Howard County granted continued sole legal and physical custody of the parties' minor child to defendant, and it limited visitation by plaintiff, by conditioning it on the therapist's recommendations.

This action is unequivocally based upon state court proceedings and plaintiff's dispute with circuit court judicial determinations. Under Maryland Code (2012 Repl. Vol.), § 9.5-202(a) of the Family Law Article ("F.L."), a Maryland court that has made a child custody determination (*see* F.L. § 5-203) has "exclusive, continuing jurisdiction," with exceptions not relevant here. Plaintiff also could have appealed the circuit court's ruling to the Maryland Court of Special Appeals. *See* F.L. §

9.5-314.  He may not proceed in federal district court based upon his dissatisfaction with the State court rulings.

Finally, to the extent that plaintiff's allegations may be generously construed to raise a Fourteenth Amendment claim, his legal assertion of discrimination amounts to a bald assertion, unsupported by any factual claims.  Generally, to establish an equal protection claim, a plaintiff must demonstrate that, (1) compared with others similarly situated, he was selectively treated, and (2) that the selective treatment was motivated by purposeful discrimination on some improper basis, such as plaintiff's membership in a particular race or religion.  *See Hernandez v. New York,* 500 U.S. 352, 360 (1991).

Here, plaintiff baldly asserts: "I'm being discriminated against and my rights abused by the Maryland State Circuit Court of Howard County Case #13-C-09-077751."  Mr. Washington provides no factual basis to support his conclusory claims of discriminatory intent.  His assertion alone fails to establish a prima facie case of discrimination.   Plaintiff's allegations are insufficient to state a plausible claim that he has a right to relief "above the speculative level."  *See Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (pleading offering only conclusions "will not do").  Accordingly, even if plaintiff alleges an equal protection claim, it should be dismissed.

Although plaintiff paid the $400.00 filing fee, the complaint must be dismissed for lack of subject matter jurisdiction.   *See*  Fed. R. Civ. P. 12(h)(3).[4]  A separate Order follows.

---

[4] This rule states: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

Date:   April 1, 2015                         _____/s/_____
                                              Ellen L. Hollander
                                              United States District Judge